### In re Brian C. BAKER, Angelina R. Baker, Debtors.

### Bankruptcy No. B88-00705-Y.

United States Bankruptcy Court, N.D. Ohio.

Aug. 10, 1988.

Brian and Angelina Baker, James Denney, Youngstown, Ohio, for debtors.

Phillip A. Millstone, Youngstown, Ohio, for Rent–A–Center.

Thomas L. Corroto, Youngstown, Ohio, Trustee.

Conrad J. Morgenstern, Cleveland, Ohio, U.S. Trustee.

### MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This matter came before the Court on the Motion of RENT–A–CENTER ("RAC") seeking relief from the automatic stay and for an Order of the Court directing the Trustee to abandon any interest of the estate in a television, stereo and VCR.

On April 17, 1987, the Debtors executed a purported rental agreement with RAC which provided for rental of a combination stereo/television and a VCR. The Debtors agreed to pay Nineteen & 95/100 Dollars ($19.95) per week for 103 weeks, at the end of which term the Debtors would have the right to purchase the property for its fair market value—which was designated to be an amount not exceeding One Hundred Seventy–Three & 56/100 Dollars ($173.56). The Disclosure Statement attached to the Agreement also provides that, "If you take this option (to purchase), the total amount you'll have to pay won't exceed ... $2,228.41."

On May 25, 1988, the Debtor filed a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code. On July 6, 1988, RAC filed the present Motion before the Court. The Debtors

urge the Court to find this agreement constitutes a lease-purchase with a security interest instead of a true rental agreement. A hearing was scheduled for July 28, 1988, at which counsel for RAC appeared, but neither Debtors nor their counsel appeared.

The proper construction of an agreement or contract is controlled by state law. Therefore, the Court must determine whether the contract between the parties was a true lease or whether it was a lease "intended as security" under the provisions found in Ohio Rev.Code Ann.Sec. 1301.-01(KK) (Anderson, 1979).

Ohio Rev.Code Ann.Sec. 1301.01(KK) provides, in part:

> (KK) 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation.... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security.

The denomination of an agreement as a lease or rental agreement alone is not dispositive concerning the nature of the instrument—rather, the facts of each case must be examined in order to assure that form is not elevated over substance. *In re Tillery*, 571 F.2d 1361, 1364–65 (5th Cir. 1978).

In *Columbus Motor Car Co. v. Textile–Tech, Inc.*, 68 Ohio Misc. 25, 428 N.E.2d 882 (Franklin Cty.Mun.Ct.1981), the court compiled a list of factors that could be considered in distinguishing a true lease from a security interest. These factors include whether the lessee:

1. Has paid an amount specifically denominated as 'sales tax'.
2. Either is required to provide full insurance coverage or otherwise assume the risk of loss.
3. Is required to pay all license or registration fees or other taxes.
4. Has paid a down payment in the form of a security interest.
5. Is responsible for all ordinary maintenance costs.
6. Has an option to purchase for either little or no consideration.

In the present case, the lessee is expressly responsible for One & 10/100 Dollars ($1.10) as the weekly applicable sales tax. Initially, it would appear that a lessee would only incur a sales tax if a sale were involved. Indeed, one Court stated that "[T]he obligation to pay taxes when borne by the consumer is an incident of ownership indicative of a secured transaction." *In re Puckett*, 60 B.R. 223, 237 (Bankr.M.D.Tenn.1986). At least two courts construing Ohio law have found such a factor to be significant. *See Columbus Motor Car Co.*, 68 Ohio Misc. at 30, 428 N.E.2d 882; *Sight & Sound of Ohio, Inc. v. Wright*, 36 B.R. 885, 890 (S.D.Ohio 1983).[1]

RAC did not require the Debtors to obtain insurance coverage; however, the agreement states that Debtors assumed the risk of loss or destruction of the property. As one court noted in a similar case:

> [The plaintiff] experiences none of the normal insurance and risk responsibilities attendant to the leasing or renting of consumer goods. [The plaintiff] does not insure itself (as an owner of goods might) against the possibility of loss of or injury from the use of the goods it claims to lease.... Assumption of all risk of loss by the customer or a middle-

---

1. In spite of this analysis, the Court has elected to discount this factor because Ohio Rev.Code Ann.Sec. 5739.01(B)(1) provides that a "sale" includes "all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is, or is to be, granted...." Thus, it appears Ohio law may provide for the imposition of a sales tax in lease transactions. In that case, the assessment of the sales tax in this case would not be particularly helpful in distinguishing a true lease from a lease intended as security.

man is one indicia of ownership frequently cited as evidence that an agreement is a security interest and not a true lease. [citations omitted].

*In re Puckett*, 60 B.R. at 236.

On the other hand, there are factors which would tend to support RAC's position that this agreement was a pure lease. For example, RAC expressly assumes responsibility for property taxes and ordinary costs of maintenance. Moreover, the agreement provides that title to the property is to remain with RAC and no initial down payment was required.

Perhaps the most important factor is whether the agreement provides that the Debtors may become owners of the property for a nominal consideration. If so, Ohio law explicitly requires a finding that the lease was intended as security, regardless of any other factor to the contrary. *Sight & Sound of Ohio*, 36 B.R. at 890. It is our considered opinion that the option price is nominal. The option to purchase could be exercised for One Hundred Seventy–Three & 56/100 Dollars ($173.56), which is only nine percent (9%) of the total lease payments. If the option were not exercised, the Debtors would face the substantially less attractive choice of continuing to rent the property at an annual rate of One Thousand Thirty–Seven & 40/100 Dollars ($1,037.40). In light of this small purchase option, the lessee would be left with no sensible alternative but to purchase the equipment for a comparatively nominal amount. RAC's attempt to designate this nominal amount as "fair market value" is not persuasive.

On balance, the Court is persuaded that the nominal option price, combined with certain other factors [2] dictates a conclusion that the lease agreement at issue was intended as security. Our conclusion is also consistent with the result reached in *Sight & Sound of Ohio*, a case which dealt with substantially identical issues. Notwithstanding RAC's attempts to contractually

characterize this agreement as a pure rental agreement, the Court is convinced that the purported lease arrangement was only intended to protect RAC's interest in the property until the Debtors had completed payment for the items.

Accordingly, RAC's Motion is hereby overruled. This Memorandum decision constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable by Bankruptcy Rule 9014.

An appropriate Order consistent with this Opinion shall be entered.

---

**2.** In addition to the nominal purchase option, two other facts support the Court's conclusion that the lease was intended as security: the risk of loss, destruction or damage was upon the lessee and at the date the agreement was entered, the parties contemplated the payment of a sum certain of $2,228.41.