**BROWN MOTORS LEASING, Appellee,**

**v.**

**REUCHER, Appellant.**

[Cite as *Brown Motors Leasing v. Reucher* (1992), 80 Ohio App.3d 225.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–118.

Decided May 22, 1992.

William Lindsley, for appellee.

Michael Portnoy, for appellant.

*Per Curiam.*

This matter is before the court on appeal from the Sylvania Municipal Court. The facts giving rise to this appeal are as follows.

On July 29, 1986, appellant, Janet F. Reucher, entered into a forty-eight-month closed-end vehicle lease agreement with appellee, Brown Motors Sales Company, a.k.a. Brown Motors Leasing ("Brown Motors"). The lease was for a 1986 Pontiac Sunbird. Brown Motors retained title to the vehicle as well as the right to repossess the vehicle upon appellant's default. Appellant's monthly lease payment was $187.50 for a total of $9,000. Appellant was responsible for maintenance, insurance, licensing, sales tax and registration of the vehicle. The lease agreement stated:

"This agreement is one of leasing only, and the lessee shall not have or acquire any right, title, or interest in the vehicle except the right to use or operate it as provided herein. Lessee has no option to purchase the lease [*sic*] vehicle."

Appellant fell behind on her payments and the vehicle was repossessed on December 21, 1989. Appellant was promptly notified and advised that the vehicle would be released to her within five business days upon payment of a $1,257.50 outstanding balance. The balance, as it appeared on the notice, was not itemized. Appellant made no attempt to retrieve the vehicle, and it was eventually sold to Brown Motors' used car division. On June 20, 1990, Brown Motors filed a complaint against appellant seeking payment in the amount of $2,005[1] pursuant to the 1986 lease agreement.

On September 13, 1990, appellant filed a motion for summary judgment arguing that pursuant to R.C. 1317.12, Brown Motors, as a secured party, failed to follow the notice requirements set forth in R.C. 1317.12, which

---

[1]

AMOUNT OWED

| | |
|---|---|
| $ 880.00 | Past payments including January 1990 payment. Also includes 12 last charges. |
| 200.00 | Repo charge |
| 1125.00 | Contract ends July 28, 1990. 6 months remaining payments on contract. $187.50 × 6. |
| $ 2205.00 | |
| − 200.00 | Less security deposit |
| $ 2005.00 | Total amount owed |

provides "if collateral for a consumer transaction is taken possession of by the secured party on default, the secured party shall, within five business days after taking possession, send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure his default. * * * A secured party who disposes of the collateral without sending notice required by this section may not recover the costs of retaking possession of the collateral and is not entitled to a deficiency judgment."

In response, Brown Motors argued that it was not a secured party and therefore the notice requirements of R.C. 1317.12 did not apply. Brown Motors also filed a motion for summary judgment arguing that appellant had breached the lease agreement.

In its decision granting Brown Motors' motion for summary judgment, the trial court determined that the 1986 lease agreement was in fact a "true lease" rather than a security interest subject to the provisions of R.C. 1317.12. The court cited the following factors in support of its decision: (1) the lease was for a forty-eight-month period; (2) there was no option to purchase the vehicle; and (3) there was no option for extension of the lease. Appellant now appeals the decision setting forth the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred in granting plaintiff's motion for summary judgment by concluding that the lease agreement between the parties was a 'true lease.'

"Assignment of Error No. 2:

"The trial court erred in concluding that [Brown Motors] was entitled to a deficiency judgment as the sale price of the leased vehicle exceeded the total amount of money Janet owed for non-payment of the lease agreement."

The issue before this court in the first assignment of error is whether the 1986 agreement creates a "true lease" or a security interest which would invoke the application of R.C. 1317.12. A lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner. *Kraemer v. Gen. Motors Acceptance Corp.* (Fla.1990), 572 So.2d 1363, 1365–1366. In a conditional sales contract or lease intended as security, the seller holds legal title as *security* for the payment of the purchase price. *Id.*

R.C. 1301.01(KK) (UCC 1–201[37]) provides in pertinent part:

"Whether a lease, other than a lease-purchase agreement as defined in division (F) of section 1351.01 of the Revised Code, is intended as security is to be determined by the facts of each case, except that (a) the inclusion of an option to purchase does not of itself make the lease one intended for security,

and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Moreover, the exclusion or an option to purchase does not necessarily make a lease a "true lease." *Columbus Motor Car Co. v. Textile–Tech, Inc.* (1981), 68 Ohio Misc. 25, 31, 22 O.O.3d 354, 358, 428 N.E.2d 882, 887. Whether an automobile lease is intended as security or a "true lease" is a determination to be made from an examination of the lease in its entirety. *Id.*

Many courts faced with this issue have been influenced by the amount of the lease's option purchase price and its proximity to the fair market value of the property. Generally, if the lessee's option price is approximately equal to the fair market value of the property, the lease is considered a "true lease." *In re Alpha Creamery Co.* (W.D.Mich.Bankr.1967), 4 UCC Rep. 794; *In re Farrell* (S.D.Ohio 1987), 79 B.R. 300. The reasoning behind this conclusion is based on the fact that the lessee has acquired no equity in the property.

On the other hand, a lessee who has an option to purchase the property for nominal consideration is generally considered to hold a security interest in the property. *In re Farrell, supra,* at 303. Lease agreements containing purchase options for nominal consideration invoke the "no lessee in its right mind" test. Clark, Law of Secured Transactions Under the Uniform Commercial Code (2 Ed.1980) 1–29 to 1–30, Section 1.05(3). If the option price in a lease is low enough (less than fair market value) that no lessee in its right mind would refuse to buy the property, the lessee arguably has acquired a security interest in the property.

In *Columbus Motor Car Co. v. Textile–Tech, supra,* an Ohio court examined a twenty-four-month open-end vehicle lease agreement with no option to purchase. The court ruled that the agreement created a security interest in the vehicle. The court's ruling was based on the following characteristics of the agreement:

"(1) An open-end lease.

"(2) Lessor is assured the original agreed value of the vehicle plus an amount that is apparently interest.

"(3) Lessor must dispose of the vehicle upon termination of the lease.

"(4) Lessees pay all insurance costs with coverage limits provided by lessor and, the lessor is an additional insured.

"(5) Lessees pay all maintenance and repair expenses.

"(6) Lessees pay all license, expenses, fees, taxes and inspection costs.

"(7) Lessees pay for indemnification of lessor for all losses, including attorneys' fees for enforcing the lease." *Id.*, 68 Ohio Misc. at 30–31, 22 O.O.3d at 358–359, 428 N.E.2d at 886.

The lease in the present case likewise had no option to purchase and assigned the responsibilities of insurance, maintenance, fees and indemnification to the lessee. However, appellant's lease differs in two respects. One, it was a closed-end lease, and two, Brown Motors was not required to dispose of the vehicle upon termination of the lease. Examining a lease agreement very similar to appellant's, the United States Bankruptcy Court for the Northern District of Oklahoma stated: "A closed end [*sic*] lease without a purchase option provides that ownership rights remain in the lessor. Those ownership rights are not extinguished simply because the lessee has agreed to undertake certain responsibilities." *In re Novack* (N.D.Okla.1988), 88 B.R. 353, 356.

Recently, a New Jersey appellate court relied on the following factors in determining a vehicle lease agreement to be a true lease:

"(1) there is no evidence indicating that [Lessee] had an option to purchase the [vehicle] for a nominal sum or would become the owner of the [vehicle] for no additional consideration at the end of the lease; (2) there is no evidence that [Lessee] would acquire any equity in the [vehicle] over the term of the lease, and (3) there is no evidence as to the useful life of the [vehicle], and thus, no evidence to support an inference that [Lessor] would abandon the [vehicle] at the end of the lease. By contrast, substantial evidence supports the finding of a true lease. Foremost is the express manifestation of the parties' intent in the lease itself: I [Lessee] understand that I [Lessee] have no option to purchase the vehicle at any time * * *. I [Lessee] understand and agree that you [Lessor] shall retain title to and ownership of the vehicle and that I [Lessee] shall have no right, title or interest in and to the vehicle, except for the right to operate the vehicle * * *.' " *Touch of Class Leasing v. Mercedes–Benz Credit of Canada, Inc.* (1991), 248 N.J.Super. 426, 435, 591 A.2d 661, 665–666.

Upon review of the lease agreement in the present case, we affirm the trial court's ruling that the 1986 lease agreement was a "true lease." As in the *Touch of Class* case above, appellant had no option to purchase the vehicle, appellant acquired no equity in the vehicle during the lease term, and Brown Motors, as lessor, was under no obligation to dispose of the vehicle at the end of the lease. Just as in *Touch of Class*, appellant's 1986 agreement contained an express manifestation that appellant had no title, right or interest in the vehicle. Accordingly, the trial court did not err in finding that reasonable minds could only conclude that the parties had entered into a true lease. Appellant's first assignment of error is found not well taken.

In her second assignment of error, appellant contends that the court erred in awarding damages to Brown Motors. Specifically, appellant contends that Brown Motors should not be entitled to damages since it ultimately made money from the resale of the vehicle.

Paragraph ten of the lease provides that upon repossession appellant is responsible for the payment of all amounts due under the lease agreement, repossession costs and reasonable attorney fees. The court in this case properly awarded Brown Motors $880 in past due lease payments, $200 in repossession fees and reasonable attorney fees minus appellant's $200 security deposit. Although the lease holds appellant responsible for any loss incurred on the final disposition of the vehicle, no provision in the lease allows appellant to gain from the sale of what is in fact the lessor's property. Accordingly, appellant's second assignment of error is found not well taken.

*Judgment affirmed.*

HANDWORK, P.J., MELVIN L. RESNICK and SHERCK, JJ., concur.