### In re PETERS MILLWORKS, INC., Debtor.

**Bankruptcy No. 91–30727.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 3, 1993.

Francis J. DiCesare, Cincinnati, OH, for M & I First Nat. Leasing Corp.

Steven L. Diller, for debtor.

Kenneth C. Baker, Toledo, OH, for Unsecured Creditors' Committee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion For Relief From Stay By M & I First National Leasing Corporation (hereafter "M & I") and Debtor's Objection. At the Hearing, the parties were afforded the opportunity to present evidence they wished the Court to consider in reaching its decision. Counsel agreed to submit legal arguments in writing. The Court has reviewed the written arguments of counsel, supporting affidavits, and exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that M & I's Motion For Relief From Stay should be Granted.

## FACTS

Debtor and M & I entered into an agreement for the lease of "One (1) Timesavers Model 352 3HP Heavy Duty Widebelt Sander" on November 5, 1988. Pursuant to the agreement, Debtor tendered a deposit of Seven Thousand Eight Hundred and 00/100 Dollars ($7,800.00) and agreed to make sixty (60) monthly "rent" payments of One Thousand Six Hundred Forty Five and 00/100 Dollars ($1,645.00). On November 5, 1988, David Peters, Debtor's President, signed a Continuing Guarantee of the lease.

On November 16, 1988, M & I and Debtor entered into a second agreement for "Two (2) Challenger Model 900 Double End Tenoners, including attachments and Tools". Debtor tendered a deposit of Twenty Seven Thousand Two Hundred Seventy Eight and 00/100 Dollars ($27,278.00) and agreed to make ten (10) consecutive monthly payments of Three Thousand Eight Hundred and 00/100 Dollars ($3,800.00) followed by fifty (50) consecutive monthly payments of Six Thousand Three Hundred Eighty and 00/100 Dollars ($6,380.00).

Debtor filed Financing Statements covering the property in both agreements. Both Financing Statements contain the following language:

"We do not believe this transaction is subject to the Uniform Commercial Code, but is filed in the event it is subject to the U.C.C., and in such event secured party shall have a purchase money security interest."

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on February 28, 1991. According to M & I, payments toward the agreements were terminated when the petition was filed. Debtor remains in possession and has failed to assume or reject the lease. On August 21, 1992, M & I filed a Motion For Relief From Stay and attendant Memorandum to which Debtor filed an Objection.

A Hearing on Debtor's Objection was convened on September 14, 1992. Counsel concur that during the Hearing, this Court found that the documents submitted con-

tained agreements to lease equipment and were not agreements for sale of equipment. Both counsel agreed to submit briefs regarding the issue of whether the agreements constitute conditional sales contracts or leases. Debtor was also Ordered to provide proof of insurance. M & I filed a Brief In Support of Motion For Relief From Stay and an Affidavit of Richard McKowen. Debtor filed its Memorandum in Support and Certificate of Insurance.

## LAW

11 U.S.C. § 362(d)(1) reads as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(g)(1) and (2) read as follows:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

## DISCUSSION

■ The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

Before this Court is M & I's Motion for Relief From Stay and Debtor's Objection. The Court heard the objection and determined that the agreement between these parties is for the lease of equipment. Counsel concur that the Court must determine whether the agreements for the lease of equipment between Debtor and M & I are actually sales contracts before making

a determination regarding whether M & I is entitled to a relief from stay.

Debtor states that there are four (4) definitive reasons why the Court should find that the agreements are actually conditional sales agreements. First, Debtor was offered an option to purchase the equipment for a minimal amount. Second, the lease price exceeded the market value of the equipment. The excess amount paid pursuant to the agreement is analogous to sales tax. Third, M & I required a substantial cash deposit from which M & I was able to accrue interest for its benefit. There is no stipulation regarding the use of that deposit. Fourth, the lease required that Debtor maintain insurance on the property as well as pay appurtenant taxes and maintenance costs. Typically, these expenses are borne by the owner of property and not the lessee. According to Debtor, the coexistence of these factors proves that the lease agreements between M & I and Debtor are not true leases.

In response, M & I disputes Debtor's assessment of the contract and offers the following arguments. First, there is no evidence of an agreement between Debtor and M & I for the purchase of equipment. Second, Debtor represented to the State of Ohio that the transactions between Debtor and M & I are leases and therefore exempt from personal property taxes. Third, the deposits were demanded solely to insure the safe return of M & I's equipment. The deposits are subject to refund upon compliance with the terms of the lease agreements. Fourth, the lease agreements state with particularity, that any improvements made to the leased equipment shall become property of the lessor. Fifth, the insurance provision in the agreements is to indemnify M & I in the event that the Debtor damages the equipment.

Both counsel endorse the Court's use of the test set forth in *In re Baker*, 91 B.R. 426 (Bankr.N.D.Ohio 1988) when making its determination regarding the character of their agreements. The debtor in *Baker, id,* entered into an agreement with Rent–A–Center (hereafter "RAC") for the rental of stereo/television equipment. The agree-

ment also included an option to purchase. The court found that the purported lease agreement was a security interest and not a true lease. In making this determination, the court considered six factors. These factors include whether the lessee:

1. Has paid an amount specifically denominated as 'sales tax'.
2. Either is required to provide full insurance coverage or otherwise assume the risk of loss.
3. Is required to pay all license or registration fees or other taxes.
4. Has paid a down payment in the form of a security interest.
5. Is responsible for all ordinary maintenance costs.
6. Has an option to purchase for either little or no consideration.

### 1. SALES TAX

The Court noted in *Baker, id,* at 427, that the lessee was expressly responsible for payment of weekly applicable sales tax. The Court found that since sales taxes are incident to ownership, the agreement was outside the realm of a lease. In the instant case, the face of the agreement designates that there are no sales or use taxes. The terms of the agreement, however, specifically apportion responsibility to Debtor for payment of use and personal property taxes.

### 2. INSURANCE COVERAGE

In *Baker, id,* at pp. 427–28, the Court found that RAC did not require that the lessee obtain or maintain insurance coverage. The agreement did allocate to lessee, liability for risk of loss or destruction of property. The Court found that the assumption of all risk of loss by the customer is one indicia of ownership frequently cited as evidence that an agreement is a security interest and not a true lease.

However, the Sixth Circuit in *In re Celeryvale Transport, Inc.,* 822 F.2d 16 (6th Cir.1987), offers a alternative approach in assessing the import of the lessee's obligation to maintain insurance. The lessee/debtor in *Celeryvale* assumed all risk of loss or damage and paid insurance costs

and taxes. The Court stated "that although the debtor, as lessee, did undertake obligations that a purchaser accepts in a conditional sales contract (i.e. payment of maintenance costs, insurance and taxes), such obligations frequently appear in valid true leases and do not indicate any intent of Trailmobile (lessor) to give full control and ownership of the trailers to the debtor."

Debtor, in the case at bar, assumed all risk of loss or damage and maintained insurance on the leased equipment. The agreements specifically provide that Debtor provide insurance so that in the event of loss, M & I's machinery can be repaired or replaced.

### 3. LICENSES, REGISTRATION FEES AND OTHER TAXES

The third factor of the *Baker* test considers the importance of payment of licenses, taxes and other encumbrances. In *Baker, supra,* the parties entered into a rent-to-own agreement and consequently there were no license, registration fees or other taxes to be paid by lessee. RAC assumed ordinary costs of maintenance as well as property taxes. The agreement in the case at bar does require that Debtor pay any license or registration fees and other taxes associated with their maintenance of the leased equipment.

### 4. DOWNPAYMENT

In *Baker, supra,* p. 428, RAC did not require a down payment. However, the Court considered this factor as one in support of the argument that there was a pure lease. Under a pure lease, title remained with the lessee and no initial down payment was required.

In the instant case, Debtor made a "lease deposit" of Seven Thousand Eight Hundred and 00/100 Dollars ($7,800.00) toward the first lease agreement and a "lease deposit" of Twenty Seven Thousand Two Hundred Seventy Eight and 00/100 Dollars ($27,278.00) toward the second lease. Paragraph five (5) of both agreements specifically provide for a refund of the deposits if

Debtor complies with the terms of the agreement. There are no provisions in the agreements for the application of the deposits toward the purchase of the equipment.

5. RESPONSIBILITY FOR ORDINARY MAINTENANCE

In *Baker, supra,* p. 428, RAC assumed the responsibility of ordinary maintenance. The Court found that this factor did tend to lend support to the argument that the agreement was a true lease. According to the terms of the contract between M & I and Debtor, Debtor is responsible for "ordinary maintenance" of the leased equipment. Debtor can make alterations, modifications, additions, subtractions, or improvements to the property only with the consent of M & I.

6. OPTION TO PURCHASE

The Court stated in *Baker, supra,* p. 428, that the most important factor to be considered in determining whether the agreement is a lease agreement or security interest, is the Debtor's ability to own the property for a nominal consideration. In Ohio, the law explicitly requires a finding that the lease was intended as security when the Debtors may become owners for nominal consideration. *In re Baker, supra,* (citing *Sight & Sound of Ohio v. Wright,* 36 B.R. 885 (D.C.S.D.Ohio 1983)). There is insufficient evidence in the instant case that the terms of the agreement grant Debtor an option to purchase the equipment.

This Court previously determined that the agreements between M & I and Debtor are for the lease of equipment. Notwithstanding the *Baker* test, it remains the decision of this Court that the plain language of the agreements show that parties intended for Debtor to use the property in accordance with the terms of the agreement; to pay rent in accordance with the agreement; and to return the property, intact, at the conclusion of the term for a refund. In addition, there are special factors which substantiate Debtor's intent to create a true lease. Debtor filed a Financing Statement disclaiming the applicability

of the U.C.C. to the transaction. Further, Debtor entered into two (2) agreements with M & I in which it acquired no equity interest. Although Debtor asserts that it acquired an option to purchase, there is no evidence that such an option exists. While some of the conditions under the lease agreements are those generally accepted pursuant to a conditional sales contract, the pivotal factor remains that M & I never relinquished ownership of the property.

The Court now turns to whether M & I is entitled to relief from stay under 11 U.S.C. § 362(g)(2). To sustain its burden of proof, M & I must establish Debtor's equity in the property. In turn, Debtor must demonstrate that M & I does not have cause to modify the stay. "Cause" may include the lack of adequate protection for M & I's interest in the leased property.

M & I has proven that Debtor's interest in the property is a leasehold. Debtor has failed to refute M & I's claim that Debtor remains in possession without compensating M & I under the lease agreement. Debtor has also failed to refute M & I's claim that Debtors did not cure the default under the lease; or assume or reject the lease. Debtor did offer proof of insurance, however, the policies do not show that casualty insurance is in effect which would cover the loss of machinery. The insurance policy covers liability for injury to person or property but it fails to provide for the full replacement value of the leased machinery pursuant to the terms of paragraph ten (10) of the agreements. Consequently, Debtor has failed to sustain its burden of proof as required by 11 U.S.C. § 362(g)(2).

Based upon the aforementioned facts, this Court finds that the agreements between M & I and Debtor are leases; and that M & I has failed to provide proof of adequate protection for M & I's interest in property leased under the agreements. As a result, M & I's Motion for Relief From Stay should be granted.

In reaching these conclusions, the Court has considered the demeanor of the witnesses, all exhibits, affidavits, evidence and arguments of counsel, regardless of wheth-

er or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that M & I First National Leasing Corporation's Motion for Relief From Stay be, and hereby is GRANTED.