TELMARK, INC., Appellee and Cross–Appellant,

v.

SCHIERLOH et al., Appellants and Cross–Appellees.

[Cite as *Telmark, Inc. v. Schierloh* (1995), 102 Ohio App.3d 801.]

Court of Appeals of Ohio,
Third District, Putnam County.

. No. 12–94–6.

Decided May 26, 1995.

*Rebecca Mills Green,* for appellee and cross-appellant.

*Hatcher, Diller, Rice & Beebe* and *Steven L. Diller,* for appellants and cross-appellees.

HADLEY, Judge.

Defendants-appellants, Carl and Sharon Schierloh, appeal the judgment entry of the Putnam County Court of Common Pleas finding them liable to plaintiff-

appellee, Telmark, Inc., for breach of a lease agreement and awarding damages. Appellee cross-appeals the judgment denying its demand for attorney fees.

Appellee, a New York corporation, entered into a lease agreement on or about June 24, 1989 with appellants. The equipment leased included a rebuilt harvester, sled bedder, and markers stock. Appellee and appellants entered into a second lease agreement for a dirt sorter and dumpcart on August 24, 1990.

Upon appellants' default of the lease agreements, appellee filed a complaint on July 16, 1993 containing four counts, including breach of the leases, unjust enrichment, and replevin. On the same day, appellee also filed a motion for an order of possession. Appellants filed an answer on September 2, 1993. Appellee filed a motion for partial summary judgment regarding breach of the leases on February 4, 1994. An agreed entry was filed on appellee's motion for possession on February 23, 1994. Appellants subsequently filed a response to the summary judgment motion on May 19, 1994.

In its judgment entry of June 3, 1994, the trial court granted appellee's partial summary judgment motion regarding the existence of the lease agreements and the subsequent default of the lease terms that resulted in damages to appellee. However, the trial court denied summary judgment regarding the amount of damages.[1]

The case was heard on June 27, 1994. The trial court, in its judgment entry of September 14, 1994, found that appellants failed to set forth evidence of their defense that appellee failed in its duty to act in a commercially reasonable manner regarding disposal of the property. As a result, the trial court granted judgment for appellee in the amount of $40,412 [2]; however, it denied appellee's request for attorney fees. In a subsequent judgment entry, dated September 23, 1994, the trial court ordered that judgment be rendered for appellee against appellants, jointly and severally, for the sum of $40,412.

It is from this judgment entry that the parties assert the following assignments of error.

## Assignment of Error No. 1

"The trial court erred in placing the burden of proving the lack of commercial reasonableness on the defendants-appellants."

---

1. The trial court noted that the replevin claim was already disposed of by agreement. The court also stated that the amount due under the leases was $48,912.

2. The amount represents the $48,912 due under the lease minus $8,500, the fair market value of the equipment held by appellee. Additionally, the parties agreed to the sale of the dumpcart.

Assignment of Error No. 2

"The trial court erred in its finding that the plaintiff-appellee made commercially reasonable attempts to sell the collateral of the defendants-appellants."

For both assignments of error, appellants center their assertions around R.C. Chapter 1309, specifically, R.C. 1309.47 and 1309.50. Since they are interrelated, we will address them accordingly.

■ R.C. Chapter 1309 applies to transactions which intend to create a security interest. Thus, naming a transaction a lease, when its intention is to create a security interest, fails to preclude the application of Article 9. *Buel Stone Corp. v. Buckeye Aeration Serv.* (Jan. 31, 1985), Franklin App. No. 84AP–440, unreported, 1985 WL 9837.

■ The prior, applicable version of R.C. 1301.01(KK)(2) stated that determining whether a transaction is a lease or security interest turns on the facts of each case. It further provided that "the inclusion of an option to purchase does not of itself make the lease one intended for security, and * * * an agreement that upon compliance with the terms of the lease the * * * lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."[3] *Id.*

Regarding this option purchase, "[g]enerally, if the lessee's option price is approximately equal to the fair market value of the property, the lease is considered a 'true lease.'" *Brown Motors Leasing v. Reucher* (1992), 80 Ohio App.3d 225, 229, 608 N.E.2d 1162, 1164.

■ In the instant case, the leases provide that the lessee is responsible for taxes, repairs, risk of loss, and insurance. They also indicate that the lessee will indemnify the lessor for any claims. These factors suggest that appellee is retaining a security interest in the equipment. See *Columbus Motor Car Co. v. Textile–Tech, Inc.* (1981), 68 Ohio Misc. 25, 30–31, 22 O.O.3d 354, 358, 428 N.E.2d 882, 886–887. The leases also include an acceleration clause which further implies that the intent was to create a security interest. *Buel Stone Corp., supra.* Nonetheless, appellee's motion for possession and supporting affidavit state that appellee is the rightful owner and that appellants had no right to possession. This is in accordance with the leases, which state that the title of the equipment remains exclusively in the lessor. In addition, the leases include an

---

3. We note that the 1992 amendments to this provision provide more guidance in determining whether a transaction is a lease or security interest; however, these leases were entered into in 1989 and 1990, respectively. In addition, R.C. Chapter 1310 specifically addresses issues regarding leases; however, the provisions were also enacted in 1992.

option to purchase the equipment, but the purchase price is the fair market value of the equipment.

Furthermore, references to these transactions are those of a lease. Although both parties present arguments under UCC Article 9 or R.C. Chapter 1309 in their trial and appellate briefs, two financing statements are a part of the record and state: "This is a lease transaction and this filing is made for informational purposes only."[4] On these statements, the titles "debtor" and "secured party" are specifically crossed out and replaced by "lessee" and "lessor." In contrast, there is also a later financing statement which does not include that language and refers to "any equity interest now existing or hereafter acquired in the following leased equipment" and lists the harvester. There is also a security agreement for the harvester in the trial exhibits; however, it appears that it was never introduced or admitted into evidence, nor is it included elsewhere in the record. Thus, the circumstances regarding these documents are unclear.

The trial court found that appellants "failed to establish by a preponderance of the evidence the stated defense that the Plaintiff has failed to dispose of the property in a commercially reasonable manner, when applying either of the similar sections of the Consumer Sales Practices Act of the State of Ohio or the State of New York." The Consumer Sales Practices statutes in Ohio deal only with a sale or lease of an item "to an individual for purposes that are primarily personal, family, or household." R.C. 1345.01(A). There is no citation to R.C. Chapter 1309 in the trial court's conclusions of law.

In summary, there is no dispute regarding the trial court's finding that appellants defaulted under the leases and the amounts due thereunder. Upon viewing the agreements as leases, we affirm the trial court's grant of judgment to appellee, albeit for different reasons.

Appellant's first and second assignments of error are overruled.

Appellee also raises the following assignment of error:

"The trial court erred in failing to grant appellee/cross-appellant its reasonable attorney fees."

---

4. R.C. 1309.431 provides that the act of filing a financing statement which covers leased goods is "not of itself * * * a factor in determining whether * * * [a] lease is intended as security." We also note that the court in *Telmark, Inc. v. Keaton* (Mar. 16, 1994), Ross App. No. 1925, unreported, 1994 WL 88939, applied R.C. Chapter 1309 by stating: "[w]e first note that although the contract between the parties purports to be a 'lease,' the parties seem to agree that the contract is really a security agreement such that the law of secured transactions applied." It is unclear what evidence the court relied on to reach this conclusion.

Appellee submits that it is entitled to attorney fees regardless of whether New York or Ohio law applies. The trial court, in its judgment entry, simply denied attorney fees without stating which law it applied or its rationale as to its denial.

In *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 6 OBR 480, 453 N.E.2d 683, syllabus, the Supreme Court of Ohio held, "The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties."

Traditionally, attorney fees were unrecoverable in a civil suit except for fees permitted by statute or a finding of bad faith. *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 369, 21 O.O.3d 228, 232–233, 423 N.E.2d 1099, 1103. Notwithstanding, the award of attorney fees has been expanded in various contractual settings. In *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702, syllabus, which is cited by appellee, the Supreme Court of Ohio found that an attorney fee provision in an owner declaration and/or by-laws between a condominium owner and the unit owners' association was not against public policy if the amount awarded was fair and reasonable. In reaching this decision, the court stated, "It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Id.* at 36, 514 N.E.2d at 705. However, the court also made clear that "the case now before us * * * involves a specific contractual provision that was assented to in a non-commercial setting by competent parties with equal bargaining positions and under neither compulsion nor duress." *Id.* at 35, 514 N.E.2d at 705.

An attorney fee award was also allowed in connection with an indemnity agreement. *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 513 N.E.2d 253, syllabus. In doing so, the Ohio Supreme Court distinguished the indemnity agreement, which was formed by "free and understanding negotiation," from "a one-sided attorney fees provision." *Id.* at 243, 513 N.E.2d at 258.

Moreover, the Fourth District Court of Appeals, applied Ohio law and denied appellee attorney fees regarding a similar lease agreement that contained an attorney fees provision. *Telmark, Inc. v. P.J.T., Inc.* (Mar. 2, 1993), Gallia App. No 92CA17, unreported, 1993 WL 63462. Cf. *Telmark, Inc. v. Keaton, supra* (applying New York law and granting attorney fees where trial court found New York law governed and neither party raised error regarding conflict of law issue).

In the instant case, appellee is a New York corporation. Additionally, the leases contain a provision that New York law will apply. However, appellants are Ohio residents, appellee is doing business and has an agent located in Ohio, and the equipment was located in Ohio. Moreover, the lease agreements are in the nature of a standard contract form with an attorney fees provision.

We find, therefore, that the requirements set forth in *Schulke, supra,* have been met. Ohio law is applicable and the grant of attorney fees under this agreement is contrary to law. The trial court properly denied appellee's attorney fees. Appellee's cross-assignment of error is overruled.

Having found no error prejudicial herein, we affirm the judgment entry of the Putnam County Court of Common Pleas.

*Judgment affirmed.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.