822 F.2d 16
 Bankr. L. Rep. P 71,846, 4 UCC Rep.Serv.2d 210
In re CELERYVALE TRANSPORT, INC., Debtor.
Richard P. JAHN, Jr., Trustee, Plaintiff-Appellant,
v.
M.W. KELLOGG COMPANY, INC., d/b/a Pullman Trailmobile, and
Federal Insurance Company, Defendants-Appellees.
 No. 86-5164.
 United States Court of Appeals,
Sixth Circuit.
 Feb. 27, 1987.
 
 Richard P. Jahn, Jr. (argued), Tanner, Jahn, Atchley, Bridges, Jahn, Chattanooga, Tenn., for plaintiff-appellant.
 William H. Horton (argued), David J. Fulton, Chattanooga, Tenn., for defendants-appellees.
 Before RYAN and BOGGS, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Richard P. Jahn, Jr., Trustee (trustee), administering the bankruptcy estate of Celeryvale Transport, Inc. (debtor), a trucking concern, appeals a judgment of the United States District Court for the Eastern District of Tennessee which affirmed a bankruptcy court decision, 44 B.R. 1007, that an equipment lease executed by debtor and Pullman Trailmobile (Trailmobile) was a true lease and not a lease intended for security. The trustee now contends that the facts and circumstances surrounding the transaction at issue, especially the purchase option incorporated in the equipment lease, evince a disguised sale in which the lease was intended as security. For the reasons discussed below, we agree with the district court's decision that the bankruptcy court's findings were not clearly erroneous and therefore affirm.
 
 
 2
 In October of 1979, Trailmobile, a manufacturer and seller of trailers, and the debtor, a Chattanooga-based, long-haul trucking enterprise, entered an equipment lease ultimately covering thirty refrigerated trailers and their cooling units.[1] The lease had a term of eight years and granted to the debtor, as lessee, an option to purchase all of the leased equipment for fair market value as determined by independent appraisers.[2] The lease also provided that Trailmobile, as lessor, retained all property rights in the equipment and expressly granted to the debtor no "rights of property or title." In addition, the lease stated that the debtor would, during the lease term, assume all risk of loss or damage and pay insurance costs and taxes.
 
 
 3
 The debtor later entered into bankruptcy and its trustee asserted in bankruptcy court that the leasing arrangement was actually a disguised conditional sale in which the lease served as security. The trustee accordingly claimed that Trailmobile was merely a holder of a security interest in the trailers and cooling units, not the owner, and since the security interest had not been perfected,[3] Trailmobile did not have an effective lien on the equipment.
 
 
 4
 The bankruptcy court found that the lease was a true lease and therefore Trailmobile remained the equipment's owner after the debtor went into bankruptcy. The bankruptcy court, relying on the relevant section of the Tennessee Code,[4] determined that, given the likely fair market value of the equipment at the end of the lease term of $4,000--$5,000 per trailer, the lessee's purchase option was not nominal and thus did not constitute a sham in a disguised sale. The court also noted other facts regarding the lease, including the absence of any absolute obligation on the debtor to exercise the purchase option. The court rejected the trustee's claim that the refrigeration units on the trailers were not accessions (and thus required separate UCC-1 perfection), concluding that the lease was a true lease to all equipment presently at issue--both the trailers and the cooling units. The trustee then moved for a new trial, but was unsuccessful.
 
 
 5
 The district court affirmed, concluding that the bankruptcy court's findings of fact were not clearly erroneous.
 
 
 6
 As the Tennessee Supreme Court held, in United States Fidelity and Guaranty Company v. Thompson and Green Machinery Company, Inc., 568 S.W.2d 821, 825 (Tenn.1978), the most illustrative test to distinguish between a true lease and a lease intended as security is whether the "lessee" is "obligated to accept and pay for the property or [instead] is obligated only to return or account for the property according to the terms of the lease from which he may be excused if he exercises his privilege of purchasing it." If the former is true, then the lease is a security instrument in a disguised sale; if the latter, then a true lease exists. See id.
 
 
 7
 In the present case, the debtor is obligated to return the leased equipment at the lease's end if it decides not to invoke the purchase option, but is under no obligation to accept the property through exercising the option. In fact, the lease explicitly grants to the debtor the right to reject the appraisals of the fair market value of the equipment at the end of the lease term and thereby not exercise the option. Further, there is no real evidence that the debtor would be "economically compelled" to invoke the purchase option; indeed, proof to the contrary exists. For example, the debtor, a long-haul operation, would have had little use for worn, older trailers at the end of the lease term since such trailers are, according to expert testimony, then good for only short trips.
 
 
 8
 Moreover, previous interpretation of the relevant statutory law also supports the conclusion that a true lease exists. Construing T.C.A. Sec. 47-1-201(37),[5] a federal bankruptcy court in Tennessee explained:
 
 
 9
 Generally, an option for the lessee to purchase the property at the end of the lease term for the then existing fair market value of the property creates an inference that the consideration to be paid by the lessee is not nominal. This inference may be rebutted, however, by proof that the fair market value of the property at the conclusion of the lease term would be negligible.
 
 
 10
 In re Coors of the Cumberland, Inc., 19 B.R. 313, 318 (Bankr.M.D.Tenn.1982). See In re Boling, 13 B.R. 39 (Bankr.E.D.Tenn.1981) (under identical, controlling North Carolina statute, an option to purchase at fair market value generally indicates a true lease since the rental payments were in fact designed to compensate the lessor for the use of the property).
 
 
 11
 Simply put, the trustee has failed to demonstrate that the fair market value (option price), at which the debtor may (not had to ) have purchased the equipment at the end of the lease term, would be nominal. He offers no proof to substantiate his contention that the entire useful life of the trailers would be expended during the eight-year lease term. Indeed, the fact that eight-year old trailers are often resold and used for short hauls demonstrates such trailers' notably practical and economic value.[6] Even the debtor's president, a witness for the trustee, estimated that each trailer would be worth at least 10% (approximately $2,800) of its original value,[7] while some expert witnesses projected values ranging from $3,000 to $12,000. We therefore believe that such evidence supports the prior determination in this case that an average option price at fair market value of $4,000--$5,000 per trailer was not nominal.
 
 
 12
 Finally, while the debtor, as lessee, did undertake obligations that a purchaser accepts in a conditional sales contract (i.e. payment of maintenance costs, insurance and taxes), such obligations frequently appear in valid true leases and do not indicate any intent of Trailmobile to give full control and ownership of the trailers to the debtor. In fact, there is plenty of proof of Trailmobile's intent to retain dominion over the leased equiment. For instance, the lease expressly stated that the equipment was to remain the sole and exclusive property of Trailmobile as lessor and the debtor must return such equipment to the lessor at the end of the lease term if he chose not to exercise the purchase option. Further, one should remember that Trailmobile took an investment tax credit on the leased equipment to which it was entitled because it was the owner and lessor of the property. The certificates of title listed Trailmobile as owner and no UCC-1 filings were made apparently because Trailmobile was and expressly intended to be the owner of, not the lienholder in, the leased equipment. Thus, the evidence refutes the contention of a masked sale. See American Standard Credit v. National Cement Co., 643 F.2d 248, 266 (5th Cir.1981) (lack of proof of lessor's intent to abandon control over the leased property, coupled with a specific finding that the equipment would have more than nominal value at the end of the lease, bars reclassification of the lease as a disguised sale.)
 
 
 13
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 
 [1]
 In 1979, the lease covered ten trailers and cooling units, but in 1980, the document was amended to cover twenty additional trailers and refrigeration units
 
 
 [2]
 Since the trailers were leased in groups and because of the option's language, the debtor could purchase the trailers in only such groups and not individually
 
 
 [3]
 The certificates of title to the trailers named Trailmobile as owner. If Trailmobile was only a secured party, the trustee contends, the certificates should have shown that the debtor was owner and Trailmobile, lienholder. The trustee also notes that no UCC-1 statements were filed regarding the refrigeration units
 
 
 [4]
 Tenn.Code Ann. Sec. 47-1-201(37) (Supp.1986) provides in pertinent part:
 Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
 
 
 [5]
 A principal purpose of this statute is to protect the creditors of a purchaser/lessee under a lease intended as security by establishing notice requirements, since otherwise the property may appear to such creditors to be free of any encumbrance
 
 
 [6]
 It is not surprising that there is no mechanistic measure to determine nominality, since the issue may easily turn on the particular facts and circumstances of the case
 
 
 [7]
 Cf. In re Boling, 13 B.R. at 43-45 (pre-set, estimated option price of 10% of the original cost of tractor trailers roughly equals fair market value and is not nominal)