**In re Willard BAILEY, Lora L. Bailey, Debtors.**

**Bankruptcy No. 2–88–03958.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Nov. 23, 1988.

Mitchel D. Cohen, Columbus, Ohio, for debtors.

George M. Hoffman, Columbus, Ohio, for Rent–A–Center.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

## ORDER ON OBJECTION TO CONFIRMATION AND VARIOUS MOTIONS OF RENT–A–CENTER OF AMERICA, INC.

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon an objection to confirmation of the Chapter 13 plan proposed by debtors Willard and Lora Bailey. The objection was filed by Rent–A–Center of America, Inc. ("RACA"). The Court heard the objection and reviewed the post-hearing brief of RACA.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) in which this bankruptcy judge may enter a final order.

### FACTUAL BACKGROUND

On December 24, 1987 RACA and Willard Bailey entered into an agreement by which Bailey was provided use of a 20–inch color television set and a two-head video cassette recorder (the "Agreement"). Documents executed in connection with the Agreement included a rental agreement, a lease disclosure statement and a liability waiver provision.

The term of Bailey's usage of the television and the recorder was month to month or week to week, depending upon the payment method he chose. Payment of the prescribed fee for a periodic term was to be made in advance with each such payment acting as a renewal of the Agreement for an additional term. The Agreement gave Bailey an option to terminate his payments at any time, return the goods and thereby end his liability for subsequent payments. He also had an option to acquire the equipment after payments for 82 weeks or 19 months and payment of $139.11.

The Agreement further provided that if Bailey defaulted in his weekly or monthly payments, he could reinstate the Agreement by curing that default and paying a small reinstatement fee. Although Bailey was responsible under the Agreement for damage to the equipment resulting from misuse, accident or casualty, pursuant to the waiver provision his liability for damage by certain mishaps was waived by payment of an additional periodic sum. RACA retained title to the equipment and had responsibility for its normal repair. If Bailey failed to return the equipment upon termination of the Agreement, RACA has the right to retake it. If such repossession were not accomplished by voluntary surrender, costs of recovery would be assessed to Bailey.

### THE LEGAL ISSUE

The legal issue before the Court is whether the Agreement created a lease, as argued by RACA, or was, in reality, a sale with a retained security interest, as asserted by Bailey.

### CONCLUSIONS OF LAW

Although the Bankruptcy Code provides for the assumption and rejection of an unexpired lease, it does not define a "lease". Section 101(45) of Title 11, United States Code defines a "security interest" as a lien created by an agreement. The legislative history of that section indicates that state or local law should be applied in determining whether an agreement denominated as a lease constitutes a. security interest under the Bankruptcy Code. H.R.

No. 95–595, 95th Cong., 1st Sess. at 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271. If the agreement is made in a commercial setting, the governing state law is the Uniform Commercial Code, specifically U.C.C. § 1–201(37), enacted in Ohio as Ohio Revised Code § 1301.01(KK). Where one party is a consumer, however, the U.C.C. provisions may be illustrative rather than controlling.

Under state law, determination whether the parties entered into a lease or a security agreement depends upon the objective intent of the parties. That issue is primarily factual. *In re Puckett*, 60 B.R. 223 (Bankr.M.D.Tenn.1986), *aff'd* 838 F.2d 471 (6th Cir.1988). Usually that intent can be determined from examination· of the applicable documents, circumstances surrounding the transactions and the parties' subsequent treatment of the relationship.

■ Because the issue is the substance of the agreement and not just its form, courts have set out a number of factors relating to the allocation of rights and responsibilities to be considered in that evaluation. E.g., *In re Yost*, 54 B.R. 818 (Bankr.W.D.Ky.1985). Although such factors are relevant, this Court believes it may be inadequate in a particular case to weigh numerically the number of factors indicating a lease against the number of factors indicating a security interest. It is an assessment of the parties' intent, taken as a whole, which controls. It has been said that:

> The appropriate course to follow is to analyze all the relevant factors surrounding the lease agreement and relationships created therein, in determining if the parties in fact intended to create a security interest. The court finds this approach preferable to adoption of a rigid test or set of criteria because of the fact sensitive nature of the inquiry and the need for a flexible analytical framework that enables the court to analyze the totality of the facts presented.

*Sight and Sound of Ohio, Inc. v. Wright (In re Wright)*, 36 B.R. 885, 890 (S.D.Ohio 1983).

Review of factors considered by various courts reveals that the most important indi-

cation of the substance of an agreement is the status of the "lessee" at the end of the lease term. *Jahn v. M.W. Kellogg Co., Inc. (In re Celeryvale Transport, Inc.),* 822 F.2d 16 (6th Cir.1987); *Alzfan v. Bowers,* 175 Ohio St. 349, 194 N.E.2d 852 (1963). Such evaluation considers the practical implications of the transaction and the feasible options for the "lessee" at that time.

In this transaction, characterization of the Agreement may differ depending upon the lease term concluded. The potential difference in characterization arises in this situation because each monthly or weekly payment constitutes acceptance of a new and separate lease term. Therefore, the relationship between the parties may vary depending upon whether Bailey has renewed the term of the Agreement only a few times or many times. After the Agreement has been renewed so many times that any remaining payments plus the purchase option payment are less than the value of the equipment, Bailey's only feasible option is to continue to renew the lease term and exercise his purchase option. In that instance the relationship created may become that of a sale with a retained security interest. On the other hand, if Bailey has renewed the term only a few times, the relationship may most accurately be characterized as a lease.

The Court was not presented with evidence of what sums Bailey had paid, how many renewal options he had exercised or the current value of the equipment when compared to the amount he would have to pay before determining whether to exercise the purchase option. Further, Bailey did not appear at the hearing or testify, and the Court was not presented evidence of his intent when entering into the Agreement. Without such evidence, the Court will not recharacterize the transaction in a manner which varies from the face of the documents and the testimony of RACA's agent. Accordingly, the Court finds the relationship between the parties to be a lease.

Based upon the foregoing, RACA's objection to confirmation is sustained. The debtor is given twenty (20) days from the date of the entry of this order to file with the Court and serve upon RACA an amendment to his plan which proposes appropriate treatment for RACA's claim.

A hearing on confirmation of any such amended plan is scheduled for December 19, 1988 at 2:00 p.m., Courtroom 130, United States Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215. RACA shall have until three (3) days prior to the above stated hearing date to object to confirmation of the amended plan. If no timely appropriate amendment to the plan is filed consistent with this order, confirmation of the debtors' plan will be denied and this case will be dismissed.

IT IS SO ORDERED.