**In re PHOENIX PIPE & TUBE, L.P., Debtor.**

**No. 92–21594T.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 19, 1993.

198

William A. Slaughter, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for debtor.

Thomas E. Ross, U.S. Trustee, Philadelphia, PA.

Stephen W. Edwards, Dolchin, Slotkin & Todd, P.C., Philadelphia, PA, for Bell Atlantic TriCon Leasing Corp.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Chief Judge.

Presently before the court for disposition is the motion of Bell Atlantic Tricon Leasing Corporation ("Bell") requesting relief from the automatic stay under 11 U.S.C. § 362(d), turnover of leased property and payment of an administrative expense.

11 U.S.C. § 362(d)(1) provides that relief from the automatic stay may be granted upon the showing of "cause." Bell, movant herein, bears the burden of establishing a prima facie case of cause, at which point the burden of proof shifts to debtor to demonstrate adequate protection. *See, In re Morysville Body Works Inc.*, 86 B.R. 51 (Bankr.E.D.Pa.1988). Here, Bell has simply alleged nonpayment of the agreement as sufficient cause. We disagree and rely on *In re Morysville Body Works Inc.* where we determined that nonpayment combined with a lack of equity will result in sufficient cause. *Morysville* held that nonpayment is an element of sufficient cause, not *per se* grounds for relief. Bell has alleged that equity does not exist since the equipment is leased. We disagree.

At issue is an agreement dated March 15, 1990 between debtor and Bell concerning various equipment. Bell contends that the Agreement constitutes a lease, which, upon default, entitles Bell to repossession. Consequently, Bell, alleging default as sufficient cause, is seeking relief from the auto-

matic stay to pursue repossession. Reliance is placed upon the title of the agreement, Equipment Lease No. 17–127–45605, and the purchase option provision as sufficient evidence to establish the agreement as a "true lease". Debtor, on the other hand, maintains that § 362 relief is not proper since the agreement is nothing more than a installment sales contract with a security interest. For the following reasons, we agree with debtor and reject Bell's assertion that § 362 relief is appropriate.

██ We duly note that state law is applicable to determine whether the instrument is a security agreement or a true lease. *See, In re Aspen Impressions, Inc.,* 94 B.R. 861 (Bankr.E.D.Pa.1989). Hence, we turn to 13 Pa.C.S.A. § 1201, which provides, in part, that a thorough analysis of the entire document is essential to determine if, in fact, the agreement is a "true lease" or a disguised security agreement. (For a comprehensive discussion of this issue, *See, In re Metropolitan Hospital,* No. 89–12542F (Bankr.E.D.Pa. March 7, 1991).) The mere title of a document does not reflect upon its true character. Furthermore, 13 Pa.C.S.A. § 1201 defines security interest, *inter alia,* as follows:

> Whether a lease is intended as security is to be determined by the facts of each case; however:
>
> \*   \*   \*   \*   \*   \*
>
> (2) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration does make the lease one intended for security.
>
> \*   \*   \*   \*   \*   \*

██ Therefore, as a matter of law, if an agreement contains a purchase option for nominal or no additional consideration, the agreement is not a true lease. *See, In re Garrett Road Supermarket, Inc.,* 95 B.R. 906 (E.D.Pa.1989) and *In re Aspen Impressions, Inc.,* 94 B.R. at 864–865.

In order to thoroughly analyze the matter *sub judice,* a closer look at the agreement is necessary. Attached to the master lease are four schedules enumerating the specific equipment and accessories. For the sake of brevity and clarity, we shall refer to the various equipment as follows: band saws, couplings, pumps and valves. The parties have stipulated to the following original purchase amounts, the band saws being $91,158.63, the couplings being $111,720.72, the pumps being $192,915.88, and the valves being $182,633.00. At the expiration of the agreement, Debtor has an express option to purchase the band saws, pumps and valves for 10% of the original cost. There is no express purchase option for the couplings.

██ We are faced with the task of determining if the option purchase prices constitute nominal consideration. We are guided by *In re Aspen Impressions, Inc.,* 94 B.R. 861 (Bankr.E.D.Pa.1989), in which our colleague, The Honorable Bruce I. Fox, meticulously discussed the criterion to be analyzed in determining whether the consideration was nominal. Simply, if the option price is substantially less than the fair market value of the equipment at the time of exercise, then the option itself is consideration for the transfer of title and the agreement is actually a conditional sales agreement. Conversely, if the option purchase price is comparable to the equipment's fair market value, then the more likely the agreement is a true lease. *Aspen,* 94 B.R. at 866. In other words, the more favorable the option terms are, the more likely the agreement is a conditional sales contract.

██ Here, expert valuation testimony was offered regarding the fair market value of the equipment. Significantly, the fair market values were opined by Bell's appraiser. The following fair market values were submitted, $55,884.14 [1] for the band saws and $120,000.00 collectively for the pumps and valves. Our next step in determining nominal consideration is to view the

---

1. Bell's appraiser placed a value of $65,000.00 for the band saws. However, in that an additional year has passed, we shall depreciate an additional 10%, resulting in a fair market value of $55,884.14.

purchase price in light of the fair market value. With respect to the band saws, the option purchase price is $9,115.86, 10% of the original cost and approximately 16.3% of the fair market value. Concerning the pumps and valves, the option purchase price is $37,557.88, 10% of the original cost and approximately 31.3% of the fair market value. We believe these purchase prices to be nominal. *See, Royal Food Markets, Inc. v. U.S. Berkel Food Machines (In re Royal Food Markets, Inc.)*, 121 B.R. 913 (Bankr.S.D.Fla.1990), where an option of 25% of *original* cost was determined to be nominal and *In re Excello Press Inc.*, 83 B.R. 539 (Bankr.N.D.Ill.1988), where an option of 15% of *original* cost was determined to be nominal. Here, the option price is only 10% of the original cost and substantially less than fair market value.

■ Even if the option purchase prices were not nominal, our financed sale determination is strengthened by both the "factors" analysis and "economic realities" analysis, two competing views adopted to determine a true lease. We first turn to the factors approach and are guided by *In re Loop Hospital Partnership*, 35 B.R. 929 (Bankr.N.D.Ill.1983). The factors approach can be utilized regardless of whether an option to purchase is present. Accordingly, all of the equipment, including the couplings, would be involved.

Essentially, the factors analysis states that the substantive provisions of an agreement dictate whether it is in fact a true lease. Here, the agreement contains characteristics indicative of a disguised security agreement stemming from a sale. *See also, In re Aspen Impressions, Inc.*, 94 B.R. at 868. The following characteristics are contained within the subject agreement: Bell's requirement that Debtor maintain insurance (Paragraph 10); Debtor bears all risk of loss (Paragraph 9); Debtor must pay all fees and taxes associated with acquisition, ownership, possession and use of the equipment (Paragraph 11); Debtor is responsible for all repairs and maintenance (Paragraphs 7 & 9); and default provisions, including subsequent sale of equipment, concerning repossession (Paragraph 13).

Moreover, all of the equipment has been installed in Debtor's mill, indicating permanency. Each of these characteristics has been determined to individually sufficiently support a finding of financed sale. *See, Orix Credit Alliance, Inc. v. Pappas*, 946 F.2d 1258 (7th Cir.1991); *Citi-Lease Co. Entertainment Family Style Inc.*, 825 F.2d 1497 (11th Cir.1987); *Brown v. Kempker (In re Kempker)*, 104 B.R. 196 (Bankr.W.D.Mo.1989); and *In re Excello Press*, 83 B.R. 539 (Bankr.N.D.Ill.1988).

■ We now turn our attention to the economic realities test. We are guided by *Victoria Hardwood Lumber Co. v. Holt–Refakis Equipment Co. (In re Victoria Hardwood Lumber Co.)*, 95 B.R. 947 (Bankr.S.D.Ohio 1988) which states that an economic analysis must be made at the end of each lease to determine if it is in the debtor's best interest to purchase the equipment. If sensible economics dictate that the equipment be purchased, then the agreement is a financed sale and not a true lease. *Victoria Hardwood*, 95 B.R. at 953; *Aspen*, 94 B.R. at 866. Clearly, it is in Debtor's interest to purchase the equipment. The equipment has been installed in the production system and removal would severely hamper, if not cease, production. Moreover, the option to purchase the equipment at a price substantially lower than replacement equipment further supports our conclusion that the agreement is truly a financed sale. Undoubtedly, sensible economics dictate that Debtor purchase the equipment. As a result, in light of 13 Pa.C.S.A. § 1201(2), *In re Aspen Impressions, Inc., In re Loop Hospital Partnership*, and *Victoria Hardwood Lumber Co. v. Holt–Refakis Equipment Co. (In re Victoria Hardwood Lumber Co.)*, we are obliged to conclude that the present agreement is in fact an installment sales contract with a security interest and not a true lease.

■ Turning back to the issue at hand, relief from the automatic stay, we find that Bell has failed to sufficiently prove their entitlement. Nonpayment alone is insufficient, *see, In re Morysville Body Works Inc.*, 86 B.R. 51 (Bankr.E.D.Pa.1988).

Thus, we are obliged to conclude that Bell has failed to met its burden of proof for relief from the automatic stay. Further, in that the document is not a true lease, Bell's request for turnover of leased property and payment of an administrative expense must also fail.[2]

An appropriate order shall follow.

## ORDER

AND NOW, this 19th day of May, 1993, it is ORDERED that the Motion of Bell Atlantic Tricon Leasing Corporation ("Bell") requesting relief from the automatic stay under 11 U.S.C. § 362(d), turnover of leased property and payment of administrative expense is hereby DENIED.

---

2. In Bell's Memorandum, additional grounds not included in the pleadings have been advanced. In that these grounds have not been properly pleaded and Debtor has not expressly or impliedly consented to the amendment, we are prohibited from addressing the issues concerning lack of adequate protection and necessity to an effective reorganization. Federal Rule of Civil Procedure 15(b); Federal Rule of Bankruptcy Procedure 7015; *Campbell v. Board of Trustees*, 817 F.2d 499, 506 (9th Cir.1987).