**In re John D. ESTEP, Debtor.**

**John D. ESTEP, Plaintiff,**

v.

**FIFTH THIRD BANK OF N.W. OHIO, Defendant.**

Bankruptcy No. 93–31252.
Adv. No. 93–3126.

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Sept. 29, 1994.

Douglass McCrury, Toledo, OH, for plaintiff UAW Legal Services Plans.

John Kostyo, Findlay, OH, for defendant Fifth Third Bank of N.W. Ohio.

Anthony DiSalle, Trustee, Toledo, OH.

### OPINION AND ORDER DISMISSING COMPLAINT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon John Estep's ("Estep") adversary complaint against Fifth Third Bank ("Bank") seeking damages for the Bank's alleged willful violation of the automatic stay pursuant to 11 U.S.C. § 362. The Court finds that Estep's complaint is not well taken and should be dismissed.

### FACTS

At trial, Estep called no witnesses of his own. Rather, he elicited the testimony of Greg Sova ("Sova"), associate counsel for the Bank, and Clara Sancrant ("Sancrant"), a collection supervisor and former lease adjuster with the Bank, on cross examination.

Estep filed a petition under chapter 13 of title 11 on April 22, 1993 (the "Petition Date").

Under a written lease dated November 21, 1991 (the "Lease"), the Bank leased a 1992 Dodge Dakota truck (the "Truck") to John and Beth Estep. *See* Joint Exhibit 2.

Estep subsequently defaulted on the Lease. The Bank obtained a judgment against Estep based on his default on December 14, 1992 (the "Judgment"). *See* Joint Exhibit 3.

According to Sancrant, Estep cured his default on the Lease in January, 1993. Sancrant further testified that Estep made his scheduled monthly payment for January, 1993.

Subsequently, Estep again defaulted in making payments under the Lease.

The Bank repossessed the Truck in March, 1993.

On April 1, 1993, the Bank provided Estep with written notice that he "ha[d] the right to redeem [the Truck] until 4–12–93 by bringing [his] account up to date". *See* Joint Exhibit 4, p. 2, para. 2. The written notice further stated "[p]lease contact Bank if you wish to redeem [the Truck] . . . on or before 4–12–93". *See* Joint Exhibit 4, p. 2, para. 3. Estep did not provide any evidence indicating that he attempted to redeem the Truck on or before April 12, 1993.

Estep's attorney notified the Bank of Estep's petition by telephone and by fax on April 22, 1993. *See* Answer of Fifth Third Bank at p. 2, para. 11.

The parties have stipulated "that, on April 23, 1993, [Bank], by and through [Sova], notified staff at the office of [Estep's] attorney by telephone that [Bank] intended to proceed with the previously scheduled repossession sale of the [Truck] on April 24, 1993 unless [Estep] brought this account current before then". *See* Joint Exhibit 1, Agreed Statement of Facts, p. 2, para. 3.

The Bank had possession of the Truck on the Petition Date and sold the Truck on April 24, 1993. *See* Answer of the Fifth Third Bank of Northwestern Ohio, National Association to Complaint for Violation of Automatic Stay and to Recover Property, p. 3, para. 16.

The parties have stipulated that "[Bank] has been scheduled by [Estep] in his Chapter 13 bankruptcy both as a secured creditor, because of the Lease, and also as an unsecured creditor, because of certain Mastercard debt". *See* Joint Exhibit 1, p. 1—2, para. 1. The parties have further stipulated that "[Bank] disputes that it was a secured creditor when [Estep] filed his petition in bankruptcy. [Bank's] position is that [the Lease] was terminated prior to that date". *See* Joint Exhibit 1, p. 2, para. 1. The parties agree that "[Estep's] Chapter 13 plan provides for the cure and assumption of [the Lease]". *See* Joint Exhibit 1, p. 2, para. 2. Estep's chapter 13 plan (the "Plan") was confirmed on October 13, 1993.

The parties have stipulated that the fair market value of the Truck would have been $3,837.78 at the expiration of the Lease. This value is identical to the "purchase option price" as set forth in a letter from the Bank to Estep. *See* Joint Exhibit 4.

Surprisingly, Estep presented no evidence at trial as to damages or attorney fees incurred as a result of the Bank's alleged violation of the automatic stay.

According to Estep, the Bank committed two separate violations of the automatic stay under 11 U.S.C. § 362(h).

First, Estep argues that the Bank's telephonic contact with the office of Estep's attorney on April 23, 1993 represented a willful violation of the automatic stay.

Second, Estep argues that the Bank committed a willful violation of the automatic stay in selling the Truck subsequent to the Petition Date. Estep argues that he retained a right of redemption in the Truck on the Petition Date because his obligation to the Bank represented a financing transaction for the Truck rather than a "true lease".

Alternatively, Estep argues that he possessed rights in the Truck pursuant to the Lease on the Petition Date.

### DISCUSSION
### BURDEN OF PROOF

█ Estep bears the burden of proof by the preponderance of the evidence. *C.f. Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (noting that "[b]ecause the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, [the Supreme Court] presume[s] that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake'") (citations omitted); *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994) (applying preponderance of the evidence standard in action under § 727(a)).

### WHETHER THE BANK'S CONTACT WITH ESTEP'S ATTORNEY REPRESENTED A WILLFUL VIOLATION OF THE AUTOMATIC STAY

█ The Court cannot agree with Estep that Sova's contact with the office of Estep's attorney on April 23, 1993 represented a violation of the automatic stay. On the contrary, the Court finds that the Bank's contact with the office of Estep's attorney was an effort by the Bank to resolve its prepetition claim against Estep. *See In re Jefferson*, 144 B.R. 620 (Bankr.D.R.I.1992) (holding that creditors's letter to debtor's counsel initiating negotiations for reaffirmation agreement did not violate automatic stay).

### WHETHER THE BANK'S SALE OF THE TRUCK REPRESENTED A WILLFUL VIOLATION OF THE AUTOMATIC STAY

In view of the fact that Estep did not possess an interest in the Lease or a right of redemption in the Truck on the Petition Date, the Bank's sale of the Truck did not constitute a violation of the automatic stay.

### *Whether the Lease was a "True Lease"*

█ The Court concludes that the Lease was a "true lease".

In light of the fact that the parties entered into the Lease prior to the enactment of the present version of O.R.C. § 1301.01(KK), former O.R.C. § 1301.01(KK) applies to the determination of whether the Lease represented a "true lease". *See* Opinion and Order Denying Motions for Summary Judgment, at pp. 8–9.

█ Whether a lease represents a security interest or a "true lease" under former § 1301.01(KK) is determined on "the facts of each case". In making this determination, the Court is guided by the test applied by the bankruptcy court in *In re Baker*, 91 B.R. 426, 427 (Bankr.N.D.Ohio 1988). The factors which the court examined in deciding whether a lease represented a "true lease" or a security agreement were:

1. Whether the lessee has paid an amount denominated as sales tax. [The court discounted this factor noting that Ohio law may provide for the imposition of sales tax in lease transactions.]
2. Whether the lessee was required to provide full insurance coverage on the leased property or otherwise assume the risk of loss.
3. Whether the lessee is required to pay all license or registration fees or other taxes.
4. Whether the lessee has paid a down payment in the form of a security interest.
5. Whether the lessee is responsible for all ordinary maintenance costs.
6. Whether the lessee has an option to purchase the leased property for little or no consideration.

*In re Baker*, 91 B.R. 426, 427 (Bankr.N.D.Ohio 1988) (citation omitted).

█ Significantly, Ohio law places primary emphasis on whether "upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration". *See* Former Ohio Revised Code § 1301.01(KK);

*c.f. State ex rel. Celebreeze v. Tele–Communications, Inc.,* 62 Ohio Misc.2d 405, 601 N.E.2d 234, 240–41 (Ct.Cl.1990) (stating that "an option to purchase for the market value of the property would indicate that a true lease exists, especially when the remaining value after the term of the lease is very high") (citations omitted). The Lease provided Estep with the right to purchase the Truck if he was not in default on the Lease for "the then fair retail value of the vehicle as set forth in the most current addition of the N.A.D.A. Official Used Car Guide retail price guide book". *See* Joint Exhibit 2, p. 1, para. 7. The parties have stipulated that the fair market value of the Truck would have been $3,837.78 at the expiration of the scheduled 60 month lease term. Most importantly, Estep would have been required to pay $3,837.78 if he had purchased the Truck at the expiration of the 60 month lease term. *See* Joint Exhibit 4, line 4. (listing "purchase option price" of $3,837.78). This factor strongly militates in favor of a finding that the Lease was a "true lease".

As the Court noted in ruling on the parties' motions for summary judgment, some of the terms in the Lease require Estep to perform obligations similar to those that a purchaser undertakes in a secured transaction. *See* Opinion and Order Denying Motions for Summary Judgment at pp. 10—11. Nonetheless, the Court does not view these facts as controlling in determining whether the Lease represented a "true lease". *See Jahn v. M.W. Kellogg Co., Inc. (In re Celeryvale Transport, Inc.),* 822 F.2d 16, 18 (6th Cir.1987) (Per curiam) (stating that "while the debtor, as lessee, did undertake obligations that a purchaser accepts in a conditional sales contract (i.e. payment of maintenance costs, insurance and taxes), such obligations frequently appear in valid true leases and do not indicate any intent of [lessor] to give full control and ownership of the trailers to the debtor" in analyzing lease under analogous Tennessee statute).

The Court finds that the parties intended a lease rather than a secured transaction. "[T]he most important indication of the substance of an agreement is the status of the lessee at the end of the lease term". *In re*

*Bailey,* 103 B.R. 886, 887–88 (Bankr.S.D.Ohio 1988). The fact that the purchase option contained in the Lease required Estep to pay fair market value for the Truck at the end of the Lease term evinces the parties' intent to create a "true lease". Here, as in *In re Celeryvale Transport, Inc.,* the Court has not been presented with evidence indicating that Estep would have been " 'economically compelled' to invoke the purchase option" at the expiration of the Lease. *In re Celeryvale Transport, Inc.,* 822 F.2d at 18. In addition, the fact that Estep remained subject to penalties for misuse of the Truck indicates that the Lease was a "true lease".

Finally, the Court notes that the facts presented to the Court also compel the conclusion that the Lease is a "true lease" when viewed under § 1301.01(KK) as presently enacted.

## WHETHER THE LEASE TERMINATED PRIOR TO THE PETITION DATE

■ The Court further finds that the Lease terminated prior to the Petition Date.

The Bank provided Estep with written notice of his right to "redeem" the Truck until April 12, 1993. Estep failed to take any action on or before April 12, 1993 to cure his default in payment to the Bank. Therefore, Estep did not possess a right to redeem the Truck or a right to enforce the Lease after April 12, 1993.

Irrespective of whether the prepetition relationship between the Bank and Estep subsequent to the Judgment is viewed as governed by Lease or whether such relationship is viewed as a mutual benefit bailment, Estep's right to redeem the Truck or to revive the Lease were extinguished on April 12, 1993. Estep has provided the Court with scant evidence as to the course of dealings between the Bank and Estep subsequent to the Judgment. This evidence does not support a finding that Estep retained any right to perform under the Lease or redeem the Truck after April 12, 1993. *See First Nat'l Bank of Cincinnati v. Cianelli,* 73 Ohio App.3d 781, 598 N.E.2d 789 (1991) (acceptance of payment which was over thirty days late by bank did not waive right to enforce lease given nonwaiver provision contained in

lease), *mot'n cert. overruled*, 62 Ohio St.3d 1455, 579 N.E.2d 1394 (1991); *c.f. Lewis v. Nat'l City Bank*, 814 F.Supp. 696 (N.D.Ill. 1993) (secured party's acceptance of late payments and partial payments on boat after acceleration of debt did not waive rights under lease under Ohio law), *aff'd*, 23 F.3d 410 (7th Cir.1994); *Allonas v. Royer*, 67 Ohio App.3d 293, 586 N.E.2d 1169 (1990) (purported promise by defendant corporations agents that they would forbear from right to repossess under floor plan financing agreement until debtors returned from vacation did not constitute waiver of right to repossess in light of contract provision which specifically stated that creditor's actions would not be construed as waiving contract terms).

■ The Court cannot agree that Estep's purported assumption of the previously terminated Lease transformed the Lease into property of the estate subject to the protection of the automatic stay.

> While the Code now expressly permits a debtor to assume an executory contract under certain conditions set forth in § 365, there still must be a viable and existing executory contract on the date the petition for relief was filed which could be assumed. If the executory contract was effectively cancelled prior to the intervention of bankruptcy, there remains nothing for the [d]ebtor to assume.

*New Media Irjax, Inc. v. DC Comics, Inc. (In re New Media Irjax, Inc.)*, 19 B.R. 199, 201 (Bankr.M.D.Fla.1982); *see Walling Crate Co. v. Hickory Point Indus., Inc. (In re Hickory Point Indus., Inc.)*, 83 B.R. 805 (M.D.Fla.1988) (debtor could not assume lease which had been terminated prepetition); *In re Seven Stars Restaurant, Inc.*, 122 B.R. 213, 218 (Bankr.S.D.N.Y.1990) (debtor could not "resurrect[ ]" lease which had previously terminated after debtor's default); *c.f. Comp III, Inc. v. Computerland Corp. (In re Comp III, Inc.)*, 136 B.R. 636, 639 (Bankr.S.D.N.Y.1992) (stating that "where an executory contract has been terminated in accordance with its terms prior to bankruptcy, section 365(e)(1) does not authorize the bankruptcy court to reach beyond the veil of the petition to reinstate the contract") (citations omitted); *In re Fidelity*

*American Mortg. Co.*, 19 B.R. 568, 573 (Bankr.E.D.Pa.1982) (debtor retained no interest in lease which had terminated prepetition as a result of debtor's default).

■ Estep's argument that the confirmation of his Plan is res judicata as to whether the Lease was property of the estate on the Petition Date is similarly unavailing. This Court agrees with the court in *Winters Nat'l Bank & Trust Co. v. Simpson* that:

> A Chapter 13 plan may not provide for disposition of property which is not property of the estate as defined in 11 U.S.C. § 541. The fact of plan confirmation cannot bind a property owner to a plan provision disposing of his property rights when such property is not within the Court's vested jurisdiction.

*Winters Nat'l Bank & Trust Co. v. Simpson (In re Simpson)*, 26 B.R. 351, 354 (Bankr. S.D.Ohio 1982).

In light of the foregoing, it is therefore

ORDERED that John Estep's complaint against Fifth Third Bank for willful violation of the automatic stay be, and it hereby is, dismissed.