In re BEVIS COMPANY, INC., Debtor.

Bankruptcy No. 93–13771.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Oct. 21, 1996.

Dennis R. Williams, Florence, KY, for Debtor.

John K. Hurd, Cincinnati, OH, for North Side.

Terry Serena, Cincinnati, OH, for I.R.S.

Mark A. Greenberger, Successor Trustee, Cincinnati, OH.

## DECISION AND ORDER

BURTON PERLMAN, Bankruptcy Judge.

Before the court is a case originally filed as a Chapter 11 case, but subsequently converted to Chapter 7 on September 27, 1995. Prior to the conversion and on approval by the court, debtor sold certain equipment. From the proceeds of sale, distribution was made to Society Equipment Leasing Corporation ("SELCO") in order to clear the interest of SELCO in the equipment. There remains some $35,000.00, held in escrow by debtor's counsel awaiting further order of this court, which represents a balance available for distribution to creditors of debtor.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (K).

North Side Bank and Trust Company ("North Side") is a secured creditor of the debtor, as is the Internal Revenue Service ("IRS"). In the present matter, North Side contends that the fund held in escrow is subject to the secured claims of North Side and/or IRS and should be distributed to them. Debtor and the successor trustee in the case filed objections to North Side's motion. They contend that the fund in question should be distributed to creditors generally rather than to secured creditors. In addition to these objections, objections were filed by Thelma Schiering, Allen Schiering, Jr., Richard Schiering, Paul Schiering, and CWR Associates. These additional objections simply state that there are sufficient funds to pay all creditors and therefore the motion of North Side should be denied.

North Side's motion came on for hearing, at which time North Side and debtor delineated the controversy. In the course of their respective remarks reference was made to the facts of the case, but no evidentiary materials or testimony was offered. The issue as presented had to do with the history of the equipment sold by debtor to which we have earlier referred. The records of the court reveal certain facts about that sale. Such information, because it is taken from our records of which we may take judicial notice, is to be regarded as part of our findings of fact. The sale occurred pursuant to a motion by debtor while in Chapter 11 to sell the subject press, free and clear of liens, for $95,000.00, with liens to attach to the sale proceeds. The motion also requested authority to pay SELCO $16,994.82 "to terminate the Lease and to accept as full payment of the purchase option under the Lease and in satisfaction of all other obligations under the Lease Agreement." The motion was granted. Subsequently, still while in Chapter 11, debtor moved for approval of payment to its secured creditors, North Side and IRS, of the sums of $18,000.00 and $25,000.00 respectively. This motion was also granted. Distribution of these three amounts left just about $35,000.00 from the sale, and it is that amount which is the subject of the present motion.

It was the contention of North Side at the present hearing that the transaction by which debtor held possession of the now sold equipment was by its nature a security transaction accompanying a sale. Debtor, to the contrary, asserted that the "Lease" was a true lease in which no security interest could arise. At the conclusion of the hearing, the court reserved decision, invited briefs from the parties, and requested that the relevant documents be made a part of the record.

North Side subsequently with its brief did provide the court with documentation which we accept as part of the record, in view of the absence of any contest with respect to them raised by debtor.

From such evidence we find the following facts. The equipment to which we have been referring consists of a 600–ton punch press purchased by debtor in 1985 for $68,000.00. Debtor at that time entered into a sale and lease back arrangement through a document to which debtor and XYOquip, Inc. were the parties.[1] The sale and lease back provided a 60–month term with payments monthly of $1,599.90. At the same time that the sale and lease back transaction occurred, debtor and XYOVEST entered into a separate option agreement whereby debtor could purchase the equipment for 10% of the original purchase price at the conclusion of the term. The sale and lease back and the separate option agreement were entered into in September, 1985. Subsequently, SELCO took over the interest of XYOquip in the transaction.

The conversion of the case to Chapter 7 occurred subsequent to the foregoing events.

Debtor raises a threshold issue which we deal with summarily. That issue is whether the security interest of North Side extends to the present fund. We hold that it does. The security interest of North Side attached pre-petition to the press. The fund in question was derived from the sale of the press, and it therefore constitutes proceeds from the sale of the press. The fund is therefore subject to the security interest of North Side. 11 U.S.C. § 552(b). We deal in like fashion with debtor's assertion that the validity of the security interests of North Side and IRS are open to question. No objection has been lodged to the proof of claim of either claimant. Consequently, pursuant to F.R.B.P. 3001, we are required to regard those proofs of claim, which assert secured status, as valid.

Because § 552(b) establishes the rights of secured creditors like North Side to continue their interests post-petition, the existence of North Side's interest in the proceeds of the equipment turns on whether the debtor was owner or lessee of the equipment. The designation on the agreement as a "lease" is not determinative of the question. The label "lease" does not make the transaction one. *In re Lunan Family Restaurants,* 194 B.R. 429, 450 (Bankr.N.D.Ill.1996). We look to state law for guidance on that determination. *In re Victoria Hardwood Lumber,* 95 B.R. 947, 952 (Bankr.S.D.Ohio 1988) (citing H.R. No. 95–595, 95th Cong., 1st Sess. at 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787). In determining whether the lease was intended as security or was a true lease, the critical statutory language is in O.R.C. § 1301.01(KK). The agreement which is the source of the present controversy was entered into by the debtor in September, 1985. A former version of O.R.C. § 1301.01(KK) was then in effect and is therefore applicable to this case. The former section provides:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended as security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended as security.

O.R.C. § 1301.01(KK) (former version). Such former version of O.R.C. § 1301.01(KK) has been amended.

As stated in both the present and former versions of § 1301.01(KK), the determination of whether an agreement is a true lease or intended as security is based on the facts and circumstances of each individual case. O.R.C. § 1301.01(KK). This reliance

---

**1.** The records of debtor indicate that the transaction was entered into with an entity named XYO-VEST, Inc., which apparently was the parent of XYOquip. In their arguments and briefs, counsel made no distinction between XYOquip and XYO-VEST as the other party to debtor's sale and lease back transaction, and we conclude that any distinction between them is immaterial.

upon individual case circumstances has been adhered to by courts in Ohio applying § 1301.01(KK). *See e.g., In re Estep,* 173 B.R. 126, 129 (Bankr.N.D.Ohio 1994); *In re Rose,* 94 B.R. 103, 105 (Bankr.S.D.Ohio 1988). This same approach has been followed by the courts of other states as well. *In re Lunan Family Restaurants,* 194 B.R. 429, 450 (Bankr.N.D.Ill.1996) ("Whether the 'lease' is bona fide or merely a financing agreement depends upon the circumstances of each case"); *In re Zaleha,* 159 B.R. 581, 583–584 (Bankr.D.Idaho 1993).

■ Further, it is clear from the Ohio statute that salient among the critical facts and circumstances to be relied upon in making our determination is whether the option to purchase was for nominal consideration. O.R.C. § 1301.01(KK). While we derive this from the express language of the former version of O.R.C. § 1301.01(KK), we note that the approach followed under the statute as amended is essentially the same. The court must therefore look to the amount of the option price as the primary factor in determining whether a lease is a true lease or one intended as security. *In re Baker,* 91 B.R. 426, 428 (Bankr.N.D.Ohio 1988) ("Perhaps the most important factor is whether the agreement provides that the debtors may become owners of the property for a nominal consideration"); *In re Farrell,* 79 B.R. 300, 303 (Bankr.S.D.Ohio 1987) ("Perhaps the most important factor to be considered in this analysis is the status of the lessee at the end of the lease term").

Where the court finds that the lessee can exercise an option to own the leased property for nominal consideration, the court need not consider other factors, but should deem the lease one intended as security. *In the Matter of Fashion Optical,* 653 F.2d 1385, 1388 (10th Cir.1981); *Sight & Sound v. Wright,* 36 B.R. 885, 890 (S.D.Ohio 1983) ("[a] broad based inquiry, however, must be cut short whenever it is determined that the purported lease provides that 'upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for nominal consideration.' In such instances, the applicable statutory provision compels the legal conclusion that the lease was one intended for security." (Citations omitted)); *In re Peters Millworks,* 151 B.R. 440, 444 (Bankr.N.D.Ohio 1993) ("In Ohio, the law explicitly requires a finding that the lease was intended as security when the Debtors may become owners for nominal consideration.") (citing *In re Baker,* 91 B.R. 426 (Bankr.S.D.Ohio 1988)); *In re Rose,* 94 B.R. 103, 105 (Bankr.S.D.Ohio 1988).

The U.S. Court of Appeals for the Sixth Circuit has also considered the analysis to be used in classifying a lease as a true lease or one intended as security. The court in *In re Celeryvale,* 822 F.2d 16, 19 (6th Cir.1987) applied Tennessee law identical to the Ohio statute at issue herein to a lease of a number of truck trailers. The court in *Celeryvale* looked at the status of the lessee upon completion of the lease and found the agreement was a true lease based on the lessee's option to purchase the trailers at fair market value upon completion of the lease. *Id.*

■ In this case, we hold that the option to purchase extended to Bevis was for nominal consideration. Accordingly, the lease was one intended as security. The determination that an option to purchase is for nominal consideration is analyzed through two tests. The lease option price in the present case was for nominal consideration under both tests. The first test compares the option price to the original cost of the leased equipment. *In re AAA Machine,* 30 B.R. 323, 325 (Bankr.S.D.Fla.1983); *In re Royal Food Markets,* 121 B.R. 913, 915 (Bankr.S.D.Fla.1990). In the present case, the option to purchase was for 10% of the $68,-000.00 original cost of the equipment, or $6,800.00. A percentage this low has been sufficient to establish that the consideration required was nominal. *In re Phoenix Pipe & Tube,* 154 B.R. 197, 200 (Bankr.E.D.Pa. 1993) (option price of 10% of original cost was nominal); *In re Excello Press,* 83 B.R. 539, 542 (Bankr.N.D.Ill.1988) (option price of 15% of original cost was nominal).

The second test compares the option price to the fair market value at the time of exercise of the option. *In re Celeryvale*, 822 F.2d 16, 18 (6th Cir.1987) ("... an option to purchase the property at the end of the lease term for the then existing fair market value of the property creates an inference that the consideration to be paid by the lessee is not nominal"); *In re Farrell*, 79 B.R. 300, 303 (Bankr.S.D.Ohio 1987). In the present case, the consideration required to exercise the option was less than 10% of the fair market value of the equipment at the time of exercise. The sale of the equipment for $95,-000.00 by the debtor shortly after exercising the option is the best evidence of the fair market value at the time of exercise. The $6,800.00 option price was a mere 7% of the value of the equipment at that time. Courts which have followed this fair market value approach have found similar consideration to be nominal. *In re Phoenix Pipe & Tube*, 154 B.R. 197, 200 (Bankr.E.D.Pa.1993) (option prices for 16.3% and 31.3% of fair market value were nominal).

The debtor cited one main case in support of its position, *In re Estep*, 173 B.R. 126, 129 (Bankr.N.D.Ohio 1994). The court in the *Estep* case does provide some guidance on the question by providing a list of factors that the court considered in its analysis of a lease. *Id.* However, the factors are inapplicable to the present case because the option price in the present lease was clearly nominal. In *Estep*, the option price was not nominal, but fair market value, and on this basis the court considered a number of other factors related to the lease. *Id.*

■ Accordingly, we hold that the lease between the debtor and XYOquip was one intended as security, and that the motion of North Side should therefore be granted. The escrow fund shall be distributed to North Side and IRS as their interests may appear.

So Ordered.