### In re VITAL PRODUCTS COMPANY, Debtor.

### Andrew HANES, et al., Plaintiffs,

### v.

### VITAL PRODUCTS COMPANY, Defendant.

**Bankruptcy No. 96–13284.**
**Adversary No. 96–1519.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 13, 1997.

Frank C. Whalen, Cleveland, OH, for Plaintiff.

Michael J. Moran, Cuyahoga Falls, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Andrew Hanes (Plaintiff), a general unsecured creditor, filed his Complaint to recover property from the bankruptcy estate of Vital Products Company (the Debtor). Following a trial on the matter, the Court's findings of fact and conclusions of law are set forth below.

### I.

Plaintiff Hanes is the owner of H & B Leasing Company (H & B). On or about October 1, 1992, the Debtor entered into a purported lease agreement (the Lease) with H & B for the lease of a 110 Ton Bliss Punch Press and related accessories (the Press). Pursuant to the terms of the lease, the Debtor was to pay the Plaintiff the sum of $1,600.00 per month as rental of the Press for a period of twenty-four (24) months. At the conclusion of the lease period, the Debtor had the option of purchasing the Press for $1,167.00. After making ten (10) of the twenty-four( 24) payments under the lease, the Debtor defaulted on its payments and refused to relinquish possession of the Press upon demand by H & B. The lease period was to expire on October 31, 1994. Following execution of the Lease, H & B subsequently assigned its interest therein to the Monroe Bank & Trust Company (the Bank). The parties have stipulated that neither the Plaintiff nor the Bank filed financing statements with either the Cuyahoga County Recorder's Office or with the Ohio Secretary of State. A further stipulation reveals that the liquidation and fair market values of the

Press is in excess of $17,500.00 and has been so valued since October of 1992. Prepetition, the Plaintiff filed a civil action in state court to recover possession of the Press. Before that case could be fully adjudicated, the Debtor caused its voluntary petition for relief under Chapter 11 to be filed in this Court. Thereupon, the present adversary proceeding ensued.

## II.

■■■ The principal dispositive issue for determination is whether the subject Lease is a true lease or one which should be construed as a disguised security agreement. In such matters the burden of proof is upon the party seeking the recovery as a true lease who must meet its burden of proof by a preponderance of the evidence standard.

■■■ Plaintiff, H & B's owner and chief executive, contends that the transaction between the Debtor and H & B was at all times intended to be a true lease. William Laufer, the Debtor's owner and chief executive, avers that the transaction at all relevant times was to vest the Debtor with ownership of the Press. That is, the Debtor contends that the document in question is a security agreement as opposed to a true lease. The term "lease" is not a defined term under the Bankruptcy Code [11 U.S.C. § 101 et seq.]. In resolving whether a transaction characterized as a lease is actually something other than a lease, bankruptcy courts typically look to applicable nonbankruptcy law for guidance, and the characterization affixed by the parties involved is not necessarily controlling. Where states have adopted the Uniform Commercial Code (U.C.C.), provisions of U.C.C. § 1–201(37) are considered in distinguishing a true lease from a disguised security transaction.[1] This is of particular significance since, for various accounting and tax purposes, a transaction which is in substance a secured installment sale of equipment is sometimes documented as a lease.[2]

The document which is captioned as a "lease" in this proceeding (Ex. A) was executed on October 1, 1992 by the Plaintiff on behalf of H & B and by Mr. Laufer on behalf of the Debtor, respectively. The Lease describes H & B as "the owner" of the Press and contains a provision which is subheaded as "Equipment Leased" which reads as follows:

> The Lessor does hereby demise, let and lease unto the Lesser and Lessee does hereby lease from the Lessor, that certain machinery and equipment as described hereinabove. (Ex. A–1).

As stated above, the Lease period was for a 24–month period commencing October 1, 1992 and continuing through October 31, 1994, with monthly "rental" payments of $1,600.00. At the Debtor's discretion the Lease provided that the Debtor could "acquire complete and unencumbered ownership" of the Press at the end of the lease term by a single payment of $1,167.00. As stipulated between the parties (Supplemental Pre–Trial Statement filed April 21, 1997), the Debtor took possession of the Press under terms of the Lease and it has remained continuously in the Debtor's possession since October 1, 1992. Significantly, this possession by the Debtor has continued although the Debtor's default in payments occurred in 1993 and the lease term expired in October of 1994.

## III.

■■■ Under existing provisions of U.C.C. § 1–201(37), as codified in Ohio, a transaction qualifies as a security interest and falls within the scope of article 9 where the obligation to pay a stream of rent payments extends for the entire term of the lease and is not subject to termination by the lessee. Once this threshold requirement is satisfied, then the transaction will be treated as a secured loan if any one of the following four standards are met:

(1) the original term of the lease is equal to or greater than the remaining economic life of the goods;

(2) The lessee is bound to renew the lease for the remaining economic life of the

---

1. Ohio has adopted U.C.C. § 1–201(37), with modifications, as O.R.C. § 1301.01(KK)(2).

2. *Bankruptcy*, Epstein, D.G., *et al.*, West Pub. Co. (1993).

goods or is bound to become the owner of the goods;

(3) The lessee has an option to renew the lease for the remaining economic life of the goods for no or minimal consideration;[3]

(4) The lessee has an option to become the owner of the goods for no or nominal consideration. [U.C.C. § 1–201(37)].[4]

■ Effectively, the present version of U.C.C. § 1–201(37) has shifted the focus from "the intent of the parties" to the economic realities of a given transaction in determining whether the transaction is a true lease or a disguised security arrangement.[5]

In view of the above statutory standards and factual findings herein, the threshold requirement is met which shows a disguised security interest: (1) the subject Lease requires monthly rental payments in the amount of $1,600.00 during the life of the twenty-four month lease and (2) the Plaintiff conceded during his testimony that the Debtor-lessee had no right to terminate the Lease prior to its agreed upon period of twenty-four months. (Hanes, Cross–Exam.). Consequently, the presence of any one of the four remaining standards of U.C.C. § 1–201(37) is needed to conclusively establish whether the subject transaction is indeed a true lease or, rather, is a disguised security interest. Under the Lease (Ex. A–1), it is observed that the Debtor is afforded an option to "acquire complete and unencumbered ownership of said lease items" at the end of the lease term by making a single payment of $1,167.00 to H & B Leasing (the lessor). That specific provision completely satisfies one of the four remaining elements of U.C.C. § 1–201(37) to conclusively establish a security interest:

(4) The lessee has an option to become the owner of the goods for no or nominal consideration.[6]

3.  As adopted in Ohio, the lessee has an option to renew the lease for the remaining economic life of the goods for no consideration or nominal additional consideration upon compliance with the lease agreement.

4.  As modified under Ohio law at O.R.C. § 1301.01(KK)(2)(d).

The above-quoted language from the Lease clearly shows that the Debtor was provided an opportunity to become owner of the equipment at the end of the lease period by simply making a single payment of $1,167.00. Remarkably, not only was the modest option purchase price less than the agreed upon monthly rental, it was substantially less than the stipulated value of the Press which was at all relevant times in excess of $17,500.00. Thusly, the option price to acquire ownership was quite nominal in view of the stated value of the Press. Indeed, the unrefuted testimony of William Laufer revealed that as of October, 1992 when the Lease was executed the anticipated buyout value of the Press would be $40,000.00, and from 1992 when the Debtor commenced operations the Press was carried as an asset on its books as a "long term debt" with a stated value of $70,000.00. (Ex. 11, Attach. E–3; Laufer, Direct).

In its decision in *In re Celeryvale Transport, Inc.*, 822 F.2d 16 (1987), the Sixth Circuit affirmed the existence of a true lease on grounds factually dissimilar from the facts herein. The Circuit correctly applied the standards of U.C.C. § 1–201(37) as codified in Tennessee law to show an instance when a lease was not found to be a secured transaction. In *Celeryvale:* (1) the lease's purchase option price was not nominal; (2) the debtor was expressly obligated to return the lease equipment; (3) there was no real evidence that the debtor would be "economically compelled" to invoke the purchase option. In the present case: (1) the option purchase price was extremely nominal in view of the stated and agreed upon valuations; (2) there was no express obligation addressed in the Lease requiring a return of the Press; and (3) the extremely low option price, when compared to the higher monthly rental rate and the stated valuation of the Press presented a most "economically compelling" reason for the Debtor-lessee to invoke the purchase option.

5.  Clark, B., The Law of Secured Transactions Under the U.C.C.

6.  See F.N. No. 4, above.

Collectively, the above findings fully satisfy U.C.C. § 1–201(37)'s factors as adopted in O.R.C. § 1301.01(KK)(2) for creation of a secured transaction, as opposed to a true lease. Accordingly, the Plaintiff failed to meet his burden of proof; judgment is hereby granted in favor of the Defendant Debtor and the Complaint is hereby dismissed. Costs are awarded to the Defendant.

IT IS SO ORDERED.

### JUDGMENT

A Memorandum Of Opinion And Order having been entered in these proceedings,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is granted in favor of the Defendant Debtor and the Complaint is dismissed. Costs are awarded to the Defendant.